UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

TREYTON L. THOMAS and
PEMBRIDGE GROUP, LTD.,

    Defendants.

CIVIL ACTION

NO. 04 CV 12315 (PBS)

## [PROPOSED] PARTIAL FINAL JUDGMENT OF DEFAULT AGAINST PEMBRIDGE GROUP LTD.

WHEREAS, on November 1, 2004, Plaintiff Securities and Exchange Commission (the "Commission"), commenced this action by filing a Complaint against Treyton L. Thomas ("Thomas") and Pembridge Group, Ltd. ("Pembridge") and summonses were issued on that date to the same;

WHEREAS, in accordance with Rule 4(h)(1) of the Federal Rules of Civil Procedure, the Commission served a copy of the summons and complaint on Pembridge on November 22, 2004;

WHEREAS, the Court accepts as true the following factual allegations in the complaint against Pembridge who has defaulted, and finds:

1.     This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), [15 U.S.C. §§ 78u(e) and 78aa].

2.     Pembridge employed the means or instrumentalities of interstate commerce, the mails, or facilities of national securities exchanges to engage in the conduct alleged in the

Complaint.

3. During 1999 through 2002, Pembridge issued fraudulent press releases touting itself as a "premier alternative asset management firm in Boston . . . [that] serves as adviser to Pembridge Fund Management (PFM), the asset management arm of the firm that manages the Concert series of equity hedge funds, the Symphony fund-of-funds, and Pembridge Venture Partners, the private-equity affiliate." Pembridge falsely claimed that it "manages or has custody over capital in excess of (USD) $400,000,000" and had achieved an annual return of "102.3% total-return for the year ending 12/13/99." for one its funds." In fact, Pembridge did not manage any substantial assets and was merely a sham.

4. In or about November 20001, Pembridge arranged for an offshore entity, Indo Sakura Trust, Ltd. ("Indo Sakura"), to obtain 70,000 Imagis warrants for $151,900 (CDN) in a private placement offering. Each warrant entitled Indo Sakura to one share of Imagis and an additional 35,000 warrants exercisable for 35,000 shares of Imagis at $2.55 (CDN) per share for an effective price of approximately $2.30 (CDN) a share.

5. A month following Indo Sakura's purchase of Imagis warrants, Pembridge approached Imagis to propose a consulting arrangement in which it would advise the Company concerning alternative ways of financing operations. On January 3, 2002, Imagis, using information provided by the Pembridge, announced that it had engaged Pembridge Venture Partners (PVP) the private equity arm of Pembridge. The January 3 press release describes Pembridge as managing "over $600,000,000" and PVP as providing "growth capital to formative companies." A business wire article published on February 21, 2002 noted Thomas' purported interest in taking a small cap facial recognition software company private and credits PVP with "$30-100 million at its disposal from existing investors" to carry out its investment strategies.

6.   On March 6, 2002, Pembridge announced that it had requested Imagis' Board of Directors to consider a tender offer whereby each shareholder would receive (USD) $4.10 per share from Pembridge acting as principal. The language used in the March 6 press release and other information made public prior to March 6 by the Defendants knowingly or recklessly gave the false impression that Pembridge was in the position to complete the tender offer.

7.   The tender offer was made by Pembridge for the purpose of inflating the price of Imagis and Imagis's stock responded as expected by hitting a 52 week high on record volume on the Toronto Stock Exchange and the OTC BB on March 6.

8.   On February 26, 2002, about a week before Pembridge's tender offer, Indo Sakura obtained 70,000 shares of Imagis' stock pursuant to its warrants. On March 11, 2002, about a week after Pembridge's tender offer, Indo Sakura exercised the remaining 35,000 warrants for $89,250 (CDN).

9.   For months following its tender offer, Pembridge acted as if it were capable of consummating the transaction and even extended the initial thirty day response period for acceptance of the offer in order to keep Imagis' stock price at inflated levels.

10.  On July 9, 2002, Imagis officially announced that it had ended talks concerning a possible take over by Pembridge.

11.  Through the foregoing conduct Pembridge violated: Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder, [17 C.F.R. § 240.10b-5], and Section 14(e) of the Exchange Act, [15 U.S.C. § 78n(e)] and Rule 14e-8 thereunder, [17 C.F.R. § 240.14e-8].

**WHEREAS,** the Court has issued an Order, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, for the entry of this Final Default Judgment based on Pembridge's

failure to answer or otherwise respond to the Commission's Complaint and the Court having considered the *prima facie* case for relief shown by the Commission in this matter which is supported by the full record and the Declaration of J. Lauchlan Wash filed with the Commission's motion for entry of this Final Judgment, and the exhibits thereto, which showing has not been rebutted by Pembridge;

NOW THEREFORE, BASED ON THE FOREGOING:

I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the Commission's application for entry of this Final Judgment is **GRANTED.**

II.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Pembridge hereby is permanently enjoined and restrained from, directly or indirectly, singly or in concert, in connection with the purchase or sale of any security, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange:

(1) employing any device, scheme, or artifice to defraud;

(2) making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statement made, in the light of the circumstances under which it was made, not misleading; and

(3) engaging in any act, transaction, practice or course of business which operates or would operate as a fraud or deceit upon any person,

in violation of Section 10(b) of the Exchange Act, [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder, [17 C.F.R. § 240.10b-5].

III.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Pembridge hereby is permanently enjoined and restrained from, directly or indirectly, singly or in concert, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange from publicly announcing that it (or a party on whose behalf it is acting) plans to make a tender offer that has not yet been commenced, if it:

    (1) is making the announcement of a potential tender offer without the intention to commence the offer within a reasonable time and complete the offer;

    (2) intends, directly or indirectly, for the announcement to manipulate the market price of the stock of the bidder or subject company; or

    (3) does not have the reasonable belief that the person will have the means to purchase securities to complete the offer,

in violation of Section 14(e) of the Exchange Act, [15 U.S.C. § 78n(e)], and Rule 14e-8 thereunder, [17 C.F.R. § 240.14e-8].

## IV.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Pembridge shall pay disgorgement of any ill-gotten gains from the conduct alleged in this proceeding, plus prejudgment interest thereon in an amount to be determined by the Court based upon evidence presented by the Commission. The Commission will submit for the Court's consideration proposed orders setting forth the proper amount of disgorgement and prejudgment interest Pembridge shall pay and setting forth the proper disposition of such funds within thirty days of the close of discovery in this case.

## V.

**IT IS FURTHER ORDERED THAT** Pembridge that Defendant shall pay a civil

penalty in the amount of $550,000 pursuant to Section 20(d)(2) of the Securities Act and Section 21(d)(3) of the Exchange Act and 17 C.F.R. § 201.1002. Defendant shall make this payment within ten (10) business days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission. The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, Operations Center, 6432 General Green Way, Mail Stop 0-3, Alexandria, Virginia 22312, and shall be accompanied by a letter identifying Pembridge as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Copies of all correspondence shall be sent to R. Daniel O'Connor, Securities and Exchange Commission, 73 Tremont Street, 6th Floor, Boston, MA 02108. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

## VI.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction of this matter for all purposes, including, but not limited to, implementing and enforcing the terms and conditions of this Final Judgment.

## VII.

**IT IS FURTHER ORDERED** that the Court expressly determines that there is no just reason for delay in the entry of this Final Judgment. The Clerk of the Court is hereby directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure to enter this Final Judgment forthwith.

## VII.

**IT IS FURTHER ORDERED** that pursuant to Rule 65(d) of the Federal Rules of Civil

Partial

Procedure, this Final Judgment is binding upon the Defendants their agents, servants, employees, partners, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise.

Dated: 9/12, 2005
Boston, Massachusetts

_____
PATTI B. SARIS
UNITED STATES DISTRICT JUDGE

( without opposition and without prejudice to co-defendant Traylon L. Thomas )